**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bluestone Care Management LLC,<br><br>Plaintiff,<br><br>v.<br><br>Savannah Stidham, et al.,<br><br>Defendants. | No. CV-25-02444-PHX-SMB<br><br>**ORDER** |

Before the Court is Defendants' Savannah Stidham and Caring Presence In Home, Care LLC ("Caring Presence HC") (collectively "Defendants") Motion to Dismiss (Doc. 16) Plaintiff Bluestone Care Management LLC's ("Bluestone") Complaint under Federal Rules of Civil Procedure ("Rule") 12(b)(3) and (6). Having reviewed the briefing and the relevant case law, the Court **denies** the motion.

**I.     BACKGROUND**

Bluestone is a New York limited liability company with its principal place of business in New York. (*Id.* at 1.) Bluestone owns home care agencies that provide unskilled, in-home personal care. (*Id.* at 2.) Caring Presence HC operates home care agencies in Arizona and Idaho. (*Id.* at 3.) On February 20, 2025, Bluestone and Stidham signed a Membership Interest Purchase Agreement ("MIPA") where Stidham agreed to sell her 100% membership interest in Caring Presence HC to Bluestone. (*Id.* at 4.) Bluestone agreed to pay $4 million in total for the acquisition, of which $500,000 was paid upon signing the MIPA. (*Id.*)

1  On March 21, 2025, Bluestone and Stidham, on behalf of Caring Presence HC, signed the Managing Agreement (the "MA"). (*Id.* at 11.) The MA provides that Bluestone would act as the "sole exclusive manager" of Caring Presence HC "and its day-to-day operations" in "a professional and commercially reasonable manner . . . on behalf of [Stidham]" from March 21, 2025 forward. (Doc. 1-1 at 29, 33.) After signing the MA, Bluestone paid an additional $1 million towards the total purchase price for Caring Presence HC. (*Id.* at 11.) Therefore, at this point, Bluestone paid Stidham $1.5 million of the $4 million agreement. (*Id.* at 13.)

Bluestone then sued Defendants, bringing two breach of contract claims. (Doc. 1 at 31–36.) The first alleges violations under the MIPA. (*Id.* at 31–34.) The second alleges violations under the MA. (*Id.* at 34–36.)

**A.  Breach of the MIPA**

The MIPA contains three pertinent provisions: Seller's Representations and Warranties, Restrictive Covenants, and Conduct of Business Prior to the Closing. (Doc. 1-1 3, 11, 13.) Bluestone alleges Stidham violated all three.

In the Seller's Representations and Warranties provision, Bluestone alleges Stidham agreed that Caring Presence HC, as of the date of signing the MIPA, complied with all operation and licensing laws, had or will fully pay all previous tax liabilities, and complied with all labor related laws. (Doc. 1-1 at 4, 6–7.) Bluestone contends Stidham violated this provision by: "failing to provide its full-time employees with adequate health insurance coverage under the [Affordable Care Act];" "failing to foreign register Caring Presence HC in Idaho to pay payroll taxes;" "failing to ever pay the appropriate amount of payroll taxes in the state of Idaho;" "failing to perform criminal background checks on employees in Idaho;" "hiring employees that failed criminal background checks in Idaho;" and "failing to have unemployment registry and unemployment insurance in Idaho." (Doc. 1 at 26.)

In the Restrictive Covenants provision, Bluestone alleges Stidham agreed to neither induce any employee or patient to cease providing services or business with Caring Presence HC nor engage in a home care agency within the State of Arizona for a five-year

period following the closing date. (Doc. 1-1 at 12.) Bluestone contends Stidham violated this provision by starting and operating a home care agency called Caring Presence in Homehealth LLC dba Arizona Angels ("Arizona Angels") and soliciting both Caring Presence HC employees and patients to the new agency. (Doc. 1 at 8, 33–34.) Additionally, Bluestone alleges Stidham is in violation of the First Addendum to the MIPA, where she agreed to not operate Arizona Angels during the restricted period and acknowledged that doing so could violate the MIPA's Restrictive Covenants. (*Id.* at 34; Doc. 1-1 at 27–28.)

In the Conduct of Business Prior to the Closing provision, Bluestone alleges Stidham agreed to preserve and maintain all Caring Presence HC permits from the date of signing the MIPA until the closing date. (Doc. 1-1 at 13.) Bluestone contends Stidham violated this provision by failing to "maintain Caring Presence HC's state and county payment program participation approvals with the Idaho Medicaid program." (Doc. 1 at 33.) On May 29, 2025, Molina Medicaid of Idaho terminated its services with Caring Presence HC. (*Id.* at 20.) Bluestone argues "that Defendants' failure to conduct background checks was the cause for the Molina Medicaid contract termination." (*Id.*)

### B. Breach of the MA

Bluestone's second breach of contract claim pertains to the MA. (*Id.* at 34–36.) Bluestone alleges Stidham agreed to compensate Bluestone for these services and provide "complete access" to Caring Presence HC's "records, offices and personal, in order that it may carry out its obligations" under the MA. (*Id.* at 35.) Bluestone contends that Stidham violated the MA by: failing to provide any compensation for its managing services; rescinding its access to the Caring Presence HC Wells Fargo bank account; rescinding its power of attorney for a state audit; rescinding its access to business mail at Caring Presence HC's Phoenix office; and rescinding its access to the United Health payor portal. (Doc. 1 at 35.)

### C. Procedural History

After filing its complaint, Bluestone moved for a temporary restraining order

- 3 -

1  ("TRO") and preliminary injunction. (*Id.* at 2.) The Court granted the TRO in part. (*Id.*
2  at 10.) At a show of cause hearing on the TRO order, the parties stipulated to its entry until
3  the preliminary injunction hearing, which is consolidated with the upcoming trial. (*Id.*
4  at 20.)

5  After Bluestone moved for the TRO, Defendants filed their Motion to Dismiss
6  pursuant to Rule 12(b)(3) and (6). (Doc. 16.) Defendants argue that venue is improper
7  because of a forum-selection clause in the MA. (*Id.* at 2.) Additionally, Defendants argue
8  that Bluestone's first contract claim is unripe. (*Id.* at 3.)

## II. LEGAL STANDARD

### A. Forum-Selection Clauses

Federal law governs the enforceability and interpretation of forum-selection clauses. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). Such clauses are presumptively valid. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). "[T]he party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which we will conclude the clause is unenforceable." *Doe 1*, 552 F.3d at 1083 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)).

### B. Forum–Selection Clauses and Rule 12(b)(3)

Under Federal Rule of Civil Procedure 12(b)(3), a party may move to dismiss an action that has been brought in an improper venue. "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in [28 U.S.C.] § 1391(b)." *Atl. Marine*, 571 U.S. at 56. "Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b). As a result, a case filed in a district that falls within § 1391 may not be dismissed under . . . Rule 12(b)(3)." *Id.*; *see also Petersen v. Boeing Co.*, 108 F. Supp. 3d 726, 730 n.5 (D. Ariz. 2015) ("The Court held Rule 12(b)(3)

was not a proper mechanism for enforcing a forum selection clause because such clauses do not render venue improper." (citing *Atl. Marine*, 571 U.S. at 60)).

If the contracted forum is within the federal court system, a forum-selection clause "may be enforced through a motion to transfer under [28 U.S.C.] § 1404(a)." *Atl. Marine*, 571 U.S. at 59; *see also Craig v. Worldwide Mixed Martial Arts Sports Inc.*, No. CV-14-00183-PHX-DGC, 2014 WL 13110667, at *2 (D. Ariz. July 8, 2014) ("[A] forum-selection clause cannot be enforced by moving to dismiss under Rule 12(b); it must be enforced by moving to transfer under § 1404(a)."). If the contracted forum is a state or foreign forum, "the appropriate way to enforce a forum-selection clause . . . is through the doctrine of *forum non conveniens*." *Atl. Marine*, 571 U.S. at 60. "A defendant bears the burden of justifying dismissal based on *forum non conveniens* . . . ." *Usme v. CMI Leisure Mgmt., Inc.*, 106 F.4th 1079, 1085 (11th Cir. 2024).

**C. Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal

"probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III. DISCUSSION

Defendants argue the Court should dismiss Bluestone's Complaint in its entirety because "it was filed in the improper venue" and the "first claim is unripe." (Doc. 16 at 4.) The Court disagrees for the following reasons.

### A. Improper Venue

Defendants ask the Court to "dismiss Bluestone's Complaint in its entirety pursuant to Rule 12(b)(3)" because the MA contains the following forum-selection clause:

> Each Party to this Agreement hereby agrees and consents that any legal action or proceeding with respect to this Agreement shall only be brought in the Supreme Court of the State of Arizona located in Yavapai County. By execution and delivery of this Agreement, each such Party hereby (i) accepts the jurisdiction of the aforesaid courts, (ii) waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the venue set forth above and (iii) further waives any claim that any such action or proceeding brought in any such court has been brought in an inconvenient forum.

(Doc. 1-1 at 37.)

Bluestone correctly responds that Rule 12(b)(3) is the improper mechanism to enforce a forum-selection clause. (Doc. 22 at 11–12.) In their reply, Defendants acknowledge this error but still contend that "the forum selection clause is nonetheless enforceable under the doctrine of forum non conveniens pursuant to the facts alleged and arguments raised in the Motion to Dismiss." (Doc. 24 at 5.) However, in their Motion to Dismiss, Defendants did not move to dismiss Bluestone's complaint under *forum non conveniens*. *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018) ("[W]hen a forum-selection clause requires suit in a specific *nonfederal* forum, the doctrine of forum non conveniens is the proper vehicle to enforce the clause." (emphasis in original)).

In *Atlantic Marine*, the Supreme Court rejected the idea that a forum-selection clause "may be enforced by a motion to dismiss under . . . Rule 12(b)(3)." 571 U.S. at 52. Here, Defendants moved to enforce the MA's forum-selection clause under Rule 12(b)(3). Therefore, the Court must deny Defendants' Rule 12(b)(3) motion as improper. *See In re Union Elec. Co.*, 787 F.3d 903, 907 (8th Cir. 2015) (noting that the Supreme Court "clearly eliminated the possibility of using Rule 12(b)(3) as a means to enforce a forum-selection clause").[1]

### B. Unripe Contract Claims

"To prevail on a claim for breach of contract, the plaintiff must prove the existence of a contract between the plaintiff and defendant, a breach of the contract by the defendant, and resulting damage to the plaintiff." *Frank Lloyd Wright Found. v. Kroeter*, 697 F. Supp. 2d 1118, 1125 (D. Ariz. 2010). Defendants argue that Bluestone's first breach of contract claim under the MIPA is not ripe because the parties "have not closed under the MIPA." (Doc. 16 at 2.) First, Defendants contend that Bluestone's allegation that Stidham breached

---

[1] The Court notes that there is no "Supreme Court" in Yavapai County. The parties agree. (Doc. 16 at 2 n.1; Doc. 22 at 8–9.) Therefore, the Court is skeptical the forum-selection clause is even enforceable. *See McNeil v. Attaway*, 348 P.2d 301, 305 (Ariz. 1959) ("In a suit to reform a written instrument a clear and convincing showing of the real agreement of the parties thereto is a requisite.").

- 7 -

the MIPA's Restrictive Covenants is "impossible" because the restrictive period is only binding five years following the closing date, which "has undisputedly not yet occurred." (*Id.* at 3.) Second, Defendants argue that Bluestone's damages are unripe "because Bluestone has not yet paid Stidham even half of the purchase price under the MIPA." (*Id.*) In other words, "Bluestone has still not suffered any damages yet" because "Bluestone has not yet fully paid for the Arizona assets, much less the Idaho assets." (*Id.* at 4.)

1. *Restrictive Covenants*

In response to Defendants' first contention, Bluestone argues that "the closing date" defines "the *end* of the Restricted Period." (Doc. 22 at 6 (emphasis in original).) Strangely, Bluestone states, "[i]f the parties had wanted to delay the start of the Restricted Period until closing, they would have explicitly done so with language such as 'commencing on the closing date.' No such language appears." (*Id.*) The Court disagrees.

The MIPA defines the relevant restricted period as: "Seller agrees as follows for a period equal to five (5) years following the Closing Date." (Doc. 1-1 at 12.) The language is clear; the restricted period begins "following" the closing date. *See Cravens v. Montano*, 567 P.3d 745, 749 (Ariz. 2025) (stating that Arizona courts interpret contracts according to "their plain and ordinary meaning" (quoting *Fid. Nat. Title Ins. Co. v. Osborn III Partners LLC*, 524 P.3d 820, 823 (Ariz. 2023))). As the Defendants correctly point out, if the five-year period began before the closing date, then the restricted period following the closing date would *not* be equal to five years. (Doc. 24 at 5–6.) Thus, the Court refuses to reach such a strained construction.

For these reasons, Bluestone's allegations that Defendants violated the Restrictive Covenants do not appear ripe. However, Bluestone's allegations that Defendants violated the MIPA's Seller's Representations and Warranties and the Conduct of Business Prior to the Closing provisions are ripe. In both provisions, Stidham's agreed responsibilities were applicable from the date of signing the MIPA. (Doc. 1-1 at 3, 13.) Therefore, Bluestone's allegations are not premature. Accordingly, Bluestone has alleged timely breaches of the MIPA in its first claim for relief.

2. *Damages*

The Court now turns to Defendants' second contention that Bluestone's alleged contract damages are unripe because Bluestone has not fully paid for Caring Presence HC. (Doc. 16 at 4.) Bluestone responded that Arizona law permits a party to sue for damages before completing performance. (Doc. 22 at 3); *see Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 620 (Ariz. 2013) ("An anticipatory repudiation is a breach of contract giving rise to a claim for damages and also excusing the necessity for the non-breaching party to tender performance." (quoting *United Cal. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 435 (Ariz. 1983))). Defendants then agreed with Bluestone's response in their reply: "Bluestone correctly pointed out that both the MIPA and Arizona law allows a seller to file claims for breach of contract prior to closing." (Doc. 24 at 7.) But Defendants respond with a new argument—Bluestone has not suffered any damages because it "has possession and control" over Caring Presence HC. (*Id.*) Markedly absent from this new argument is any citation to a supporting case. The Court is unsure why Bluestone's mutually agreed upon arrangement to manage Caring Presence HC would nullify any damages suffered by Bluestone as a result of Defendants' alleged breaches.

Bluestone has sufficiently alleged damages. In its Complaint, Bluestone contends Defendants' failure to follow labor compliance laws—in purported violation of the MIPA's Seller's Representations and Warranties provision—diminished Bluestone's agreed upon interest to purchase Caring Presence HC in full because the violations opened the company to "tens of thousands of dollars of potential liability and attorneys' fees." (Doc. 1 at 27.) Bluestone also argues that Defendants' failure to maintain Caring Presence HC's Idaho Medicaid license—in purported violation of the MIPA's Conduct of Business Prior to the Closing provision—diminished Bluestone's interest in Caring Presence HC because it can no longer service hundreds of Medicaid patients. (*Id.* at 28.) And Bluestone claims Defendants' continued operation of Arizona Angels—in purported violation of the First Addendum to the MIPA—diminishes Caring Presence HC's value through consumer confusion. (*Id.* at 30.) Bluestone states that Caring Presence HC "received several phone

calls from prospective employees" inquiring about job opportunities posted by Arizona Angels. (*Id.*) Caring Presence HC was not hiring for those positions at that time. (*Id.*)

For these reasons, the Court finds that Bluestone has sufficiently pled its first breach of contract claim because it alleged timely violations that harm its agreed upon contractual interests. *See City of Chandler v. Roosevelt Water Conservation Dist.*, 559 P.3d 184, 193 (Ariz. Ct. App. 2024) ("A breach of contract claim requires: (1) the existence of a contract; (2) breach; and (3) resulting damages."). Therefore, the Court denies Defendants' Rule 12(b)(6) motion.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED denying** Defendants' Motion to Dismiss (Doc. 16).

Dated this 15th day of September, 2025.

Honorable Susan M. Brnovich
United States District Judge